Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7140 | **DATE** | 7/19/2002 |
| **CASE TITLE** | DEERE CREDIT INC. vs. LOWELL QUARRIES, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants Lowell Quarries and Geoffrey Rogers' motion for summary judgment is Granted, and Plaintiff's motion for summary judgment is denied. This case is hereby terminated. This is a final and appealable order. Any pending motions are stricken as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 23 2002 date docketed | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 47 |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEERE CREDIT, INC. ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. OO C 7140 |
| ) | |
| LOWELL QUARRIES and ) | |
| GEOFFREY ROGERS ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are cross-motions for summary judgment. Defendants Geoffrey Rogers and Lowell Quarries ("Lowell") has moved for entry of final summary judgment pursuant to Fed. R. Civ. P. 56. Also pending is Plaintiff Deere Credit, Inc.'s ("Deere") motion in opposition to Defendants' motion and their motion for final summary judgment. For the reasons stated below defendants' motion for final summary judgment is granted, finding that the lease agreements were a security agreement; and that the statutory notice provisions were not met, barring any deficiency recovery by Deere.

## BACKGROUND FACTS

Deere Credit, Inc. ("Deere") is a Delaware corporation that conducts business in

1

Iowa. Lowell Quarries ("Lowell") is an Indiana corporation with its principal place of business in Illinois. Lowell's main purpose of business was to mine lime from a quarry in Indiana.

In September 1997, Lowell and Deere entered into four written agreements titled "Master Equipment Leases" ("Agreement"). The Agreement involved heavy equipment (two Payhauler trucks and two Read screens) Lowell wanted to acquire for use in its mining operations.[1] The principals of Lowell, Terrence O'Shaughnessy ("O'Shaughnessy") and Geoffrey Rogers ("Rogers"), signed the Agreement as Colessees.

The Agreement called for monthly payments of $16, 170.80 over the course of six years. The payments would total $1,164,297.60 at the end of the agreement. The terms of the Agreement obligated Lowell, after default, to pay full consideration of the agreement, minus any value Deere received from a sale of the equipment. Each individual Master Equipment Lease, comprising the Agreement, contained a clause allowing Lowell to purchase the equipment upon completion of the Agreement term. Each piece of equipment was to be available for a cost of $1.00 each. This cost reflected Deere's anticipated residual value at the end of the Agreement term.

In January 1999, Deere sent Lowell a notice of default, after Lowell was unable to attain economic viability for its operations. On May 12, 1999, Deere sent a letter to Lowell requesting voluntary surrender of the collateral equipment. This letter also requested Lowell to waive all notice for sale of the collateral.[2] On May 18, 1999, Lowell added a notation to the bottom of the received letter declaring that the right to notice was retained

---

[1] There is a dispute between the parties as to whether the Agreements are actual leases or disguised security agreements, discussed below.

[2] "I hereby agree to grant access to collateral and surrender object(s) and do not oppose Deere Credit from getting possession of their assets. I also hereby waive the 14 days private sale notice." *Plaintiff's Sec. Amend. Comp.*, Ex 6.

and explicitly not waived.[3] This requested waiver and declination to waive is at the core of one of the disputes between the parties. Lowell, with O'Shaughnessy and Rogers signing as co-lessees, signed and returned the letter to Deere.

In May 1999, Deere sold the Read screens at a private sale; and in November 1999, Deere also sold the trucks at a separate private sale. Deere did not provide notice to Lowell or O'Shaughnessy or Rogers before either of the private sales.

Deere filed an action in this Court in January 2001, requesting a declaration of default against Lowell, and requiring Lowell to pay damages and interest in the form of a deficiency from the Agreement.

## **DISCUSSION**

When there are cross-motions for summary judgment the Court will still apply the same standard for as for a single motion for summary judgment. A moving party is entitled to a grant of a motion for summary judgment where there are no issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.s. 242 (1986). "The court must extend to each party the benefit of any factual doubt when considering the other's motion." *Buttitta v. City of Chicago*, 803 F.Supp. 213, 217 (N.D. Ill. 1992) *aff'd* 9 F.3d 1198 (7th Cir. 1993). However, here the facts support a finding in favor of one of the moving parties.

The parties raise a number of issues in their motions. However, two issues are dispositive: 1) Whether the Agreement is a true lease or a disguised security agreement; and 2) If the Agreement is a disguised security agreement, whether Deere provided adequate notice of the sale to dispose of the collateral after default and repossession.

---

[3] In no way do the lessees waive any rights, claims or defense by virtue of this voluntary surrender. Plaintiff's Sec. Amend. Comp., Ex 6.

**Lease as a Security Agreement**

Both parties agree at the outset that Iowa law controls. The parties quickly diverge in their agreement. Lowell initially claims that the Agreements are not leases but rather security agreements as a matter of law. Deere responded that it was irrelevant whether the Agreements were leases or disguised security agreements. Without conceding that the U.C.C. applied to the transaction (concerning relevant notice provisions). Plaintiffs Opp. Memo. at 8. This Court agrees with Lowell that the transaction was a disguised security agreement.

A transaction is properly defined as a security agreement when certain aspects of the Uniform Commercial Code are met. The Iowa U.C.C. clearly defines when a transaction is a security agreement versus a lease.

> Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and
> (1) the original term of the lease is equal to or greater than the remaining economic life of the goods,
> (2) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,
> (3) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or
> (4) <u>the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.</u>

Iowa Code *§554.1201(37)(b)* (2001) (emphasis added). Sections (3) & (4) of this provision apply directly to the Agreement here.

Each Master Lease Agreement included the following clause under the heading Option to Purchase: "Provided Lessee is not in default under any provision of this Lease

4

Agreement or any Schedule, at the expiration of the Lease Term or any Renewal Term (if applicable), Lessee shall have the option to purchase any particular piece of Equipment for the Option Purchase Price." *Plaintiff's Second Amend. Comp.* Ex. 1-4. Each Schedule listed the Purchase Option Price for the respective piece of Equipment at $1.00. "Clearly, where a lease is structure so that the lessee is contractually bound to pay rent over a set period of time at the conclusion of which he automatically or for only nominal consideration becomes the owner of the leased goods, the transaction is in substance a conditional sale and should be treated as such." *In re Marhoefer Packing Co., Inc.*, 674 F.2d 1139 (7th Cir. 1982), see *Car/son v. Tandy Computer Leasing*, 803 F.2d 391 (8th Cir. 1986) (holding an transaction is a security agreement where lessee has an option to purchase the collateral for nominal consideration).

There is no question that viewed under statutory interpretation the Agreement is not a true lease but rather a disguised security agreement. Therefore, Iowa U.C.C. applies to the transaction and any questions of notice or the commercial reasonableness of the disposition of collateral.

**Notice Requirements**

Lowell next claims that Deere must demonstrate compliance with the notice requirements of Article 9. Deere in turn argues that no notice was required as Lowell waived all rights to notification.

Before addressing the issue of whether there was a waiver of notification rights by Lowell, it is important to note that there is no dispute concerning the lack of actual notice – required or not. Both sides agree that there was no letter of notification of disposition (either by private or public sale) sent to Lowell prior to the sale of the repossessed

5

collateral.[4]

The second true issue is whether Lowell waived its right to notice, thereby allowing Deere to dispose of the collateral in an otherwise commercially reasonable manner. Deere asserts that Lowell waived its right to notice by responding to the letter requesting voluntary surrender of the collateral after default. Lowell in turn claims that a sentence added prior to returning the letter to Deere preserved their rights post-default.

On May 12, 1999 Deere sent Lowell, Rogers and O'Shaughnessy a letter requesting voluntary surrender of the collateral. Included in the letter, directly above the signature lines was the following language.

> Signature of this agreement will waive the 14 Day private sale notice and facilitate the recovery and sale of the equipment above. I hereby agree to grant access to collateral and surrender asset(s) and do not oppose Deere Credit from getting possession of their asset(s). I also hereby agree to waive the 14 day private sale notice.

Plaintiffs Resp. Stat. of Facts A Ex. 6. Deere contends that this language above the signatures of Roger and O'Shaughnessy for Lowell effectuated a proper waiver of U.C.C. notice requirements.

Lowell and Roger argue that the letter, even though signed and returned to Deere, did not effectuate a waiver of their notice rights. Prior to signing and returning the letter to Deere, the following language was clearly added: "In no way do the Lessees waive any rights, claims or defenses by virtue of this voluntary surrender." *Id.* The text added is clear and concise in its message that Lowell was only offering the collateral for surrender, not waiving any rights.

---

[4] Oral notice is ineffective under the Iowa U.C.C. "Notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if the debtor has not signed after default a statement renouncing or modifying the debtor's right to notification of sale. Iowa Code §554.9504(3) (2001) (emphasis added).

6

Iowa courts have clearly held that additional language controls in situations containing inconsistencies. "Where part of a contract is written and part is printed, and the written and printed parts are apparently inconsistent or there is reasonable doubt as to the sense and meaning of the whole, the words in writing will control the construction of the contract." *Deutschle v. Wilson*, 39 F.2d 406, 407 (8th Cir. 1930). The language by Lowell, added prior to remission to Deere, is given full effect.

"When an instrument consists partly of written and partly of printed form, the former controls the latter, if the two are inconsistent. The writing necessarily has been deliberately inserted, and therefore is more likely to have represented the intention of the party than the inconsistent language printed." *Urbany v. City of Carroll*, 157 N.W. 852, *855* (Iowa 1916). This Court reads the additional sentence added to the letter to clearly indicate a retention of Lowell's right to notice. Deere makes an argument concerning specific and general terms, and which should control. It is clear under Iowa case law that the additional text controls, versus the previously drafted letter.

To this Court there is no question of material fact concerning the waiver of notice. Since the written language is controling under Iowa law, and since the language is unambiguous, there remains no issue to be resolved regarding the effect of signing the letter. The letter did not effect a waiver of the right to notice. Lowell intended to retain all rights concerning notice of the private sale of the voluntarily surrendered equipment. Therefore Deere bore the burden of providing sufficient notice under Iowa Code.

The Code is clear in the requirements of a commercially reasonable sale, concerning notice.

> Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sake or reasonable notification of the time after which any private sale or other intended disposition is to be made is to be sent by the secured

7

part to the debtor, if the debtor has not signed after default statement renouncing or modifying the debtor's right to notification of sale.

Iowa Code § *554.9504(3)* (2001). Deere did not send notice to Lowell concerning the private sale of the equipment, in fact there was no further correspondence between the parties until after the sale was completed.

"A secured party who has failed to give reasonable notification of the sale of repossessed property and has conducted such sale in a commercially unreasonable manner is not entitled to recover any deficiency from the defaulting purchaser." *Dallas County Implement, Inc. v. Harding,* 439 N.W. 2d 220 (Iowa App. 1989). "The purpose of the statute is to give debtors an opportunity to arrange refinancing and redeem repossessed property before any sale may take place." *John Deere Leasing Co. v. Fraker,* 395 N.W. 2d 885 (Iowa 1986). Since Deere did not send notice to Lowell, Deere is prohibited under the Iowa Code from pursuing any deficiency remaining after the sale.

Part of "commercially reasonable" in reference to the sale of collateral after repossession is providing notice. "This provision entitled [debtor] to the lease agreement to receive reasonable notice of sale" *Chemlease Worldwide Inc. v. Brace, Inc.,* 338 N.W. 2d 428 (Minn. 1983). Iowa courts have been clear in requiring notice for a sale to be commercially reasonable. "Lack of notice defeats any claim to a deficiency judgment asserted by the secured party." *Herman Ford-Mercury, Inc. v. Betts,* 251 N.W. 2d 492, 495 (Iowa 1977). "Compliance with the notice requirements is a prerequisite to a deficiency judgment." *John Deery Motors, Inc. v. Stienbronn,* 383 N.W. 2d 553, 554 (Iowa 1986).

Deere also brought this suit against Rogers in his individual capacity as co-lessee to the Agreement, for any deficiency not met by Lowell. Deere is correct in asserting that Rogers would be liable for any debt left by Lowell. As co-lessee and guarantor Rogers assumed a position of debtor should Deere choose to pursue any deficiency from the

transaction. However, Deere is also unable to pursue a deficiency from Rogers. Any notice requirements which needed to be met in relation to Lowell also apply to Rogers.

A guarantor, in this case a co-lessee, is considered a debtor under the U.C.C. "A majority of jurisdictions, as well as our own, hold that a guarantor is a debtor within the meaning of U.C.C. section 9-504." *A.L.C. Financial Corp v. Kustom Body Works*, 437 N.W. 2d 593, *595* (Iowa App. 1989), *see also Chemlease Worldwide Inc. v. Brace, Inc.*, 338 N.W. 2d 428 (Minn. 1983). "A guarantor faces potential liability when the sale price does not cover the deficiency. Additionally, a personal guaranty given by the primary participant in a family owned corporation often means the guarantor is, in essence, the debtor." *Id. See United States v. Jensen, 41* 8 N.W. 2d 65 (Iowa 1988) (holding co-signatories should be considered as debtors under Iowa code as, they have an interest in receiving notice, specifically to minimize potential payment).

Since Deere failed to provide notice to Lowell, O' Shaughnessy, or Rogers, the right to pursue a deficiency was lost. The U.C.C. applies equally to creditors and debtors in either their individual or corporate capacity. "After default, the secured party is entitled to sell any or all of the collateral following any commercially reasonable preparation or process. However, *§554.9504(3)* mandates the creditor give notification of the time after which disposition of the property is to be made." *Dallas County Implement, Inc. v. Harding*, 439 N.W. 2d 220 (Iowa App. 1989).

Since Lowell properly retained its right to notice, and Deere did not provide notice of the collateral sales to Lowell or Rogers, Deere is barred from receiving any deficiency recovery.[5]

---

[5] The Court also grants Lowell's Motion to Strike (Nov. 13, 2001). The Affidavit submitted as Ex.A to Defendant's Response to Statement of Additional Facts, was not considered in reaching this decision.

## CONCLUSION

For the reasons set forth above, defendants Lowell Quarries and Geoffrey Rogers' motion for summary judgment is GRANTED, (#23) and Plaintiff's motion for summary judgment is denied (#28). This case is hereby terminated. This is a final and appealable order. Any pending motions are stricken as moot.

**SO ORDERED:**

ENTER: July 19, 2002

HON. RONALD A. GUZMAN
United States Judge